[Cite as *State v. Williams*, 2015-Ohio-4100.]
STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 13 MA 125 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| LEXTER WILLIAMS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
                             Common Pleas of Mahoning County,
                             Ohio
                             Case No. 2009 CR 78

JUDGMENT:                    Affirmed in part. Reversed in part.
                             Remanded.

APPEARANCES:

For Plaintiff-Appellee:      Atty. Paul J. Gains
                             Mahoning County Prosecutor
                             Atty. Ralph M. Rivera
                             Assistant Prosecuting Attorney
                             21 West Boardman Street, 6th Floor
                             Youngstown, Ohio 44503

For Defendant-Appellant:     Atty. Rhys B. Cartwright-Jones
                             42 N. Phelps St.
                             Youngstown, Ohio 44503-1130

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

                             Dated: September 30, 2015

WAITE, J.

{¶1} Appellant Lexter Williams appeals from his July 12, 2013 resentencing entry. Appellant was resentenced after a partially successful appeal to this Court in *State v. Williams*, 7th Dist. No. 11 MA 131, 2012-Ohio-6277 ("*Williams I*"). As a result of that appeal, Appellant was resentenced to an aggregate total of 81.5 years for his convictions on aggravated robbery, aggravated burglary, kidnapping, gross sexual imposition and having a weapon while under disability. Appellant argues that the kidnapping and aggravated robbery charges should have merged at sentencing as they are allied offenses of similar import. Similarly, Appellant argues that the gross sexual imposition and kidnapping charges should have merged at sentencing. Appellant also argues that his sentence is disproportionate to sentences received by similarly situated defendants within the region.

{¶2} In response, the state argues that under the facts of this case, the offenses do not merge, as the movement of the victims was substantial and the victim of gross sexual imposition was secretly confined. The state also argues that Appellant violated the terms of his plea agreement, thus he received a higher sentence than originally agreed.

{¶3} Two additional arguments were brought to our attention at oral argument. Appellant argued that the trial court failed to make the requisite consecutive sentence findings pursuant to R.C. 2929.14(C)(4). Additionally, Appellant argued that he was not properly notified of his postrelease control sentence. As to the merger issues, Appellant's arguments are partially sustained because a complete merger analysis was not undertaken. Thus, we partially remand

the matter to the trial court to conduct a proper merger review. Appellant's argument is without merit as to his disproportionality claim. However, in regard to the two sentencing issues which arose at oral argument, Appellant's arguments have merit and the matter is remanded to the trial court with instructions to consider the consecutive sentencing factors and to inform Appellant of his postrelease control sentence. Finally, we *sua sponte* remand due to error with regard to counts four and five in the sentencing entry, as those counts actually relate to aggravated burglary but are incorrectly labeled and dealt with by the court as aggravated robbery counts.

### Factual and Procedural History

**{¶4}** Appellant and two co-defendants entered an occupied house through a sliding glass door in the kitchen. Upon entry, they observed Joshua Garcia in the kitchen. Appellant put his gun to Mr. Garcia's head and ordered him into the living room where the female victim and Mark Shepherd were watching television. Appellant ordered all three to the floor and demanded money. Appellant then took hold of the female victim's hair and pulled her to a standing position. He forced her at gunpoint from the living room to the basement stairs, down the stairs and into the basement. Appellant's two co-defendants held Mr. Garcia and Mr. Shepherd on the living room floor at gunpoint while the female victim was taken to the basement.

**{¶5}** Once in the basement, Appellant began ransacking drawers. The female victim asked Appellant not to frighten her son, who was upstairs on the second floor. Appellant pointed his gun at her and threatened to shoot her if she continued talking. While at gunpoint, Appellant forced the female victim to kiss him.

He then removed her pants and began to sexually assault her. During this encounter, one of his co-defendants started down the stairs and Appellant stopped his assault. He ordered the female victim to put her clothes back on. Appellant and his co-defendant then forced the female victim to the second floor of the house, while the remaining co-defendant continued to hold Mr. Garcia and Mr. Shepherd at gunpoint in the living room. Once upstairs, Appellant and his second co-defendant robbed the female victim. That evening Appellant and his co-defendants took several phones, a duffel bag, a digital camera, an ID card, an x-box, x-box games, a DVD player, several rings, and more than $600 from the three victims.

{¶6} Appellant and his co-defendants were later arrested. On October 22, 2009, Appellant was charged with the following offenses: three counts of aggravated robbery in violation of R.C. 2911.01(A)(1)(c), a felony of the first degree; one count of aggravated burglary in violation of R.C. 2911.11(A)(1)(B); one count of aggravated burglary in violation of R.C. 2911.11(A)(2)(B), a felony of the first degree; three counts of kidnapping in violation of R.C. 2905.01(A)(2)(C), a felony of the first degree; one count of kidnapping in violation of R.C. 2905.01(A)(4)(C),a felony of the first degree; one count of rape in violation of R.C. 2907.02(A)(2)(B), a felony of the first degree; one count of having a weapon while under disability in violation of R.C. 2923.13(A)(2)(B), a felony of the third degree; and firearm specifications for all counts except having a weapon while under disability.

{¶7} On October 28, 2010, Appellant entered into a plea agreement with the state. In exchange for Appellant's guilty plea, his rape count was to be reduced to

gross sexual imposition. In addition, the state agreed to recommend a thirteen-year total sentence. The written, signed plea agreement expressly stated that it was conditioned on Appellant's compliance with its terms, which included: electronic monitoring house arrest (EMHA), reporting daily to CCA, complying with all laws, and appearing at the sentencing hearing.

{¶8} On September 17 and 18, 2010, Appellant failed to report to CCA as required under the terms of his plea agreement. Shortly thereafter, CCA learned that he had removed his ankle bracelet. Based on this information, the trial court ordered the issuance of an arrest warrant for Appellant. Appellant was found in Philadelphia, Pennsylvania and was extradited to Mahoning County. At the sentencing hearing, in light of the fact that Appellant had fled the state, the prosecutor recommended the maximum sentence. Appellant argued that fleeing the state did not, in and of itself, support a maximum sentence. However, the trial court found that Appellant had violated the terms of his plea agreement and found it significant that he had fled. Accordingly, the trial court sentenced Appellant to the maximum sentence.

{¶9} At the sentencing hearing, the trial court sentenced Appellant as follows: eight years of incarceration on each of the three counts of aggravated robbery; ten years on each of the two counts of aggravated burglary; ten years on each of the three kidnapping counts; eighteen months on the gross sexual imposition count (GSI); and five years for having a weapon while under disability. Each of these sentences were ordered to run consecutively. The trial court also sentenced Appellant to three years for the firearm specifications, which were merged for

sentencing purposes. Although the trial court judge did not announce the total sentence, it appears that the court sentenced Appellant to 93.5 years at the hearing. However, in the entry, Appellant's aggregate total was listed as 83.5 years. In addition, the court announced an eight-year sentence per robbery count at the hearing; however, in the written entry, Appellant was sentenced to ten years per count.

{¶10} In *Williams I*, we vacated Appellant's sentence and remanded the matter for resentencing. We instructed the trial court to resolve the discrepancy between the two sentences, to notify Appellant of post-release control, and to inquire as to whether any of the offenses were allied offenses of similar import for merger purposes. However, we upheld the trial court's denial of Appellant's motion to withdraw his guilty plea and additionally found that the trial court did not abuse its discretion on proportionality because Appellant failed to raise the issue at the sentencing hearing.

### First Assignment of Error

The trial Court erred in failing to merge Lexter William's [sic] sentences as allied offenses of similar import.

{¶11} Appellant contends that each charged offense occurred at the same time and place and all acts were intended to accomplish the same goal, thus his kidnapping charge should have merged with the GSI and robbery charges. He specifically argues that every robbery requires some form of restraint in order to complete the offense, so that the kidnapping charges for all three victims should have

merged with the respective robbery counts for sentencing purposes. Similarly, he argues that every rape (reduced to a GSI) requires some form of restraint in order to complete the offense, so he claims his GSI charge should have merged with the remaining kidnapping charge for sentencing purposes.

{¶12} In response to both arguments, the state argues that although these specific offenses may merge under some factual instances, this is not one of those cases. The state further explains that, under Ohio law, a kidnapping charge does not merge with a second offense when "the restraint is prolonged, the confinement is secretive, or the movement is substantial." (Emphasis deleted.) (Appellee's Brf., p. 11.)

{¶13} The state discusses the actions of Appellant pertaining to each victim, beginning with victim Mark Shepherd. As each victim, except Mr. Shepherd, was transported into another room before the act of robbery was committed, the state argues that the movement was substantial and more than necessary to commit the robbery. The state does acknowledge that Mr. Shepherd was simply ordered to the ground. Turning to the gross sexual imposition and kidnapping convictions, the state argues that Appellant placed the female victim in danger by moving her to a different location before committing the sexual assault, thus her movement was substantial. Further, as she was taken to a location away from the other victims, her confinement was secretive. She was later transported (unnecessarily) to yet another confined location where she was robbed, but again placed in fear of another sexual assault.

**{¶14}** As merger of allied offenses presents a question of law, an appellate court must conduct a *de novo* review. *State v. Burns,* 7th Dist. No. 09-MA-193, 2012-Ohio-2698, ¶60. R.C. 2941.25(A) provides that when the same conduct involves two or more allied offenses of similar import, the defendant may only be convicted of one offense. R.C. 2941.25(B) states that when a defendant's conduct involves two or more dissimilar offenses, or when the conduct is similar but is committed separately or with a separate animus, the defendant may be convicted of all offenses.

**{¶15}** Since R.C. 2941.25 was enacted, several Ohio Supreme Court decisions have undertaken its interpretation. In determining whether offenses were of similar import, earlier cases looked to whether the offenses at issue contained similar elements. See *State v. Logan,* 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979). The focus on elements led to a two-part test: (1) a comparison of the offenses' elements and (2) a review of the defendant's conduct and animus for each offense. See *State v. Blankenship,* 38 Ohio St.3d 116, 526 N.E.2d 816 (1988). The two-part test was later amended to include an abstract analysis of the offenses. See *State v. Rance,* 85 Ohio St.3d 632, 710 N.E. 699 (1999). The Ohio Supreme Court, recognizing the inconsistent results produced by *Rance*, recently created a new test in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

**{¶16}** Pursuant to *Johnson,* a court must determine whether it is possible to commit one offense and also commit the other offense(s) with the same conduct. *Id.* at ¶48. If the answer is yes, then the court must additionally determine whether the offenses were committed by the same conduct, *i.e.* whether they were a "single act,

committed with a single state of mind." *Id.* at ¶49. If the answer is yes, then the offenses are allied and merge for sentencing purposes. Conversely, if the answer to either of the questions is no, then the offenses are not allied and do not merge. *Id.* at ¶50. Thus, the Court placed the focus on the defendant's conduct.

**{¶17}** Recently, the Ohio Supreme Court modified *Johnson* in *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. In *Ruff,* the Court recognized that its holding in *Johnson* was incomplete as it failed to define the term "import." *Id.* at ¶9. Accordingly, the Court produced a fact-specific analysis that looks at the defendant's conduct, the animus, and the import. *Id.* at ¶26. The resulting test asks three questions: (1) whether the offenses are dissimilar in import or significance, *i.e.* each offense caused a separate and identifiable harm; (2) whether the offenses were separately committed; and, (3) whether the offenses were committed with separate animus or motivation. *Id.* at ¶25. If the answer to any of these questions is yes, then the offenses do not merge. *Id.* The Court acknowledged that, due to the fact-specific nature of the test, results will vary on a case-to-case basis. *Id.* at ¶32. As other district courts have noted, it remains unclear which pre-*Johnson* and *Ruff* cases are still relevant.

**{¶18}** This leads to a discussion of *State v. Logan,* 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979). Although *Logan* is both a pre-*Johnson* and *Ruff* case, it continues to maintain at least some relevance, as it was analyzed under the language contained within the third prong in *Ruff.* Relevant to the instant case, *Logan* held that when kidnapping is one of the applicable offenses and there is

prolonged restraint, secret confinement, and movement which causes a substantial risk of harm to the victim, the offenses do not require merger. *Id.* at 135.

**{¶19}** Pursuant to our request, the state filed a notice of supplemental authority. In addition to the material we requested, the state filed notice of intent to rely on three additional cases. Among the cases raised by the state is *State v. Parker,* 7th Dist. No. 03-MA-190, 2005-Ohio-4888. In *Parker,* a pre-*Johnson* case, a defendant broke into a home and encountered a fifteen-year-old girl and the two children she was babysitting. *Id.* at ¶15. The defendant ordered the girl to perform oral sex on him and after she refused, he choked her. *Id.* He then led her to a bedroom, placed a loaded and cocked gun next to her, and raped her. *Id.* After the defendant completed the rape, he ordered her to remain in the room until he left and threatened to kill the children if she moved. *Id.*

**{¶20}** Using a *Logan* analysis, we held that the rape and kidnapping had a separate animus, thus were not allied offenses. *Id.* at ¶27. Although *Parker* precedes *Johnson,* it is arguably still relevant as we specifically found that each act had a separate animus, a consideration we now analyze under the third prong of *Ruff.* As merger has developed into a fact-specific analysis, we must place a high emphasis on factual similarities when relying on *stare decisis* in a merger case. Unlike the present matter, *Parker* involves only two offenses – rape and kidnapping. The additional offense of robbery in the matter before us is highly important. However, *Parker* presents a situation in which movement from a downstairs area to

an upstairs area where a victim is raped and additionally held against her will while the offender escapes does not require merger of kidnapping and rape charges.

{¶21} The state next cites to *State v. Gardner,* 7th Dist. 10 MA 52, 2011-Ohio-2644. While *Gardner* presents a case involving the question of merger of rape and kidnapping offenses, that is where the similarities end. Unlike the case at bar, the defendant in *Gardner* was driving in his car behind the victim as he pointed his gun at her and directed her where to drive, blocking her attempts to stray from his path by swerving in front of her. *Id.* at ¶3. He led her to an abandoned house where, after a brief interruption from a neighbor, he assaulted and raped her. *Id.* at ¶5-7. This is a significant factual departure from the instant case, where each offense was committed in various rooms of the same house. As the law on merger is fact-specific, *Gardner* holds little, if any, value in our analysis.

{¶22} The final case cited by the state is *State v. Smith,* 7th Dist. No. 11 MA 120, 2013-Ohio-756. Of all the supplemental authority provided, *Smith* is most closely aligned with the instant case. In *Smith,* a defendant broke into a home and awoke his victim by shaking her. *Id.* at ¶3. Once awake, he moved her out of her bedroom, down a hallway to a dining room, and then to her living room where he raped her. *Id.* at ¶3-4. He then took her back to her bedroom and placed her in a closet while he searched for valuables, removing several items and money. *Id.* at ¶5. He took her out of the closet and raped her a second time. *Id.* at ¶6. After the second rape, he took her to the bathroom and forced her to take a bath before he left the house. *Id.* at ¶7. On review, we held that the acts of kidnapping were not merely

incidental to the rapes. *Id.* at ¶98. Instead, the act of kidnapping was a restraint for purposes of committing a robbery and to facilitate his escape without allowing the victim to immediately call the police. *Id.* Thus, *Smith* has some value in our analysis as regards the sexual assault victim in the present case.

*Victim 1, The female victim*

**{¶23}** We begin by reviewing whether the kidnapping, GSI, and robbery offenses are dissimilar in import, or in other words, whether the harm that resulted from each offense is separate and identifiable. In reviewing Appellant's acts throughout the ordeal, the female victim was held at gunpoint the entire time. However, looking more specifically at each act, the record demonstrates that the female victim appears to have suffered separate and identifiable harm at each stage of the encounter.

**{¶24}** We first examine whether the harm that resulted from the kidnapping was separate from the sexual assault and robbery. The apparent kidnapping occurred between the initial confrontation and the assault. During this time period, the female victim suffered several harms. First, she was ordered to the living room floor at gunpoint. Second, she was forcibly pulled to a standing position by her hair. Third, she was led at gunpoint from the living room, down a set of stairs, and into the basement. Fourth, once in the basement, Appellant pointed his gun at her and threatened to shoot her if she did not keep quiet. In addition to the presence of the gun and Appellant's threats, it could also be argued that Appellant used the female victim's fear for her son to restrain the victim prior to the assault. None of these

incidents overlapped with either the assault, which did not occur until they had been in the basement for some time, or the actual robbery, which occurred later and on a separate level of the house.

**{¶25}** The restraint in regard to the assault involved Appellant holding a gun to his victim's head and forcing her to kiss him and subsequently assaulting her. This restraint is clearly different than the restraint which occurred prior. Turning to the robbery of the female victim, while Appellant argues that the sole purpose for entering the home was to complete a robbery, it is clear that the sexual assault was an intervening act. Thus, it appears from the record that Appellant's actions as a whole do not constitute a continuous sequence of events related to robbery. Accordingly, his initial detainment of this victim cannot be linked to the robbery as that event did not occur until after the assault and occurred on a separate floor of the building.

**{¶26}** Next, we examine whether the offenses were committed with separate animus or motivation. We first look to whether the force used against the female victim was more than what was necessary to complete the assault and robbery. Appellant held a loaded semi-automatic handgun to the victim's head, pointed the gun at her while threatening to shoot her, and at one point pulled her from the ground to a standing position by her hair. If the sole purpose of her restraint was robbery, Appellant could have left the female victim with the other two victims in the living room while he ransacked the house. Instead, he took her with him to the basement and exposed her to additional harms, which the other two victims did not suffer.

Thus, the force used was more than was necessary to accomplish both assault and robbery.

**{¶27}** We next look to whether the movement was substantial. The victim was forced to the living room floor, then pulled to a standing position by her hair and led to the basement stairs, down the stairs, and into the basement. After her sexual assault in the basement, she was forced back up the stairs and led to the second level of the house, where the robbery actually took place. This amount of movement is arguably substantial.

**{¶28}** Additionally, as she was led away from the other victims and onto a separate floor of the house, her restraint was secretive and she was subjected to an increased risk of substantial harm. Hence, it is apparent that the kidnapping was not incidental to the sexual assault. This record is less clear, however, on the second kidnapping charge as it relates to the robbery of the female victim. While the offenses of kidnapping and gross sexual imposition are not allied here and are not subject to merger, the record is inadequate to determine whether the second kidnapping charge should merge with the robbery charge. Appellant's argument as to the charges pertaining to his offenses against the female victim are sustained in part and the matter is remanded to the trial court to determine whether merger is appropriate as to the second kidnapping charge.

*Victims 2 and 3, Mr. Shepherd and Mr. Garcia*

**{¶29}** Although Mr. Garcia was additionally restrained as he was led from the kitchen at gunpoint into the living room where Mr. Shepherd was found, the two

suffered similar harms and will be discussed together. This record is factually sparse in regard to the restraint involving Mr. Shepherd and Mr. Garcia. One important fact not in evidence is the duration of the restraint. Although Appellant offers that the restraint lasted a matter of less than five minutes, that appears unlikely in reviewing the facts that do appear in the record. Mr. Shepherd and Mr. Garcia were ordered to the floor almost immediately after Appellant entered the house and remained there while the female victim was taken to the basement, the basement was ransacked, the female victim was sexually assaulted and then taken to the second floor of the house, where finally she was robbed. It is incredible that all of these activities took place within a matter of minutes.

{¶30} However, this record reveals very little about the detainment of the two male victims. It is impossible to determine from the trial court's record whether merger is appropriate in regard to the charges connected to the crimes against these victims. It is apparent, however, that an appropriate merger review was not undertaken in the trial court. Thus, we remand the issue of merger of the kidnapping and robbery charges as these relate to victims Shepherd and Garcia, as well. Hence, while we affirm the trial court in part on the issue of merger of the kidnapping and GSI counts, we remand for further action on the question of merger of kidnapping and robbery charges regarding all three victims.

<u>Second Assignment of Error</u>

The trial Court erred in declining to impose sentences commensurate with those regional Court typically impose on similarly situated defendants.

**{¶31}** Before we address the assignment of error contained in Appellant's brief, at oral argument Appellant raised two additional sentencing errors. First, he argued that the trial court failed to make the requisite consecutive sentencing findings in both the sentencing hearing and the sentencing entry. Second, he asserted that the trial court failed to properly notify him of his postrelease control sentence. The state conceded both issues.

**{¶32}** As these issues were raised for the first time at oral argument, Appellant is limited to a plain error review. "In order to reverse based on 'plain error,' an actual error must exist, the error must be an obvious defect in the trial proceedings, and the error must affect the substantial rights of the defendant." *State v. Kolat,* 7th Dist. No. 07 BE 5, 2008-Ohio-869, ¶9, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶33}** Pursuant to R.C. 2929.14(C)(4), before a trial court can impose consecutive sentences on a defendant, the court must find:

[T]hat the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶34}** The consecutive sentence findings must be made at the sentencing hearing and must additionally be incorporated into the sentencing entry. *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶37. However, a trial court need not state reasons to support its finding nor it is required to use any "magic" or "talismanic" words, so long as it is apparent that the court conducted the proper analysis. *State v. Jones,* 7th Dist. No. 13 MA 101, 2014-Ohio-2248, ¶6, citing *State v. Verity*, 7th Dist. No. 12 MA 139, 2013-Ohio-1158, ¶28-29.

**{¶35}** The trial court failed to mention R.C. 2929.14(C) at the sentencing hearing despite ordering Appellant's sentences to run consecutively. Failure to

explicitly mention the statute is not fatal. However, there is nothing else within the record that could allow us to find that the trial court conducted a proper sentencing analysis prior to consecutive sentencing, as the record is devoid of any discussion of the R.C. 2929.14(C)(4) factors. It is clear that the written entry is also devoid of any appropriate findings. Based on this record, plain error exists and the matter is remanded to the trial court with instructions to complete the appropriate sentencing analysis in accordance with R.C. 2929.14(C)(4) should the trial court determine that consecutive sentencing is necessary.

**{¶36}** Turning to the issue of postrelease control, pursuant to R.C. 2929.19(B), a trial court must give notice of postrelease control to a defendant sentenced on a first-degree felony. R.C. 2967.28(B)(1) states that the postrelease control period for a first-degree felony is five years. There are four things a trial court must tell a defendant who is subject to postrelease control:

> (1) [T]he offender will be subject to postrelease control supervision under R.C. 2967.28; (2) if the offender violates postrelease control supervision or a condition of postrelease control, the parole board may impose a term of incarceration, as part of the sentence, of up to one-half of the stated prison term originally imposed; (3) whether postrelease control is mandatory or discretionary; and (4) the duration of postrelease control.

*State v. Peck,* 7th Dist. No. 12 MA 125, 2013-Ohio-5526, ¶8, citing *State v. Newsome*, 3d Dist. No. 12-12-03, 2012-Ohio-6119, ¶72; *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶27-29.

**{¶37}** A trial court must inform a defendant of his postrelease control sentence at both the sentencing hearing and within the sentencing entry. *State v. Butler,* 7th Dist. No. 10 JE 44, 2011-Ohio-6366, ¶6, citing *State v. Singleton,* 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, ¶22. If it is found that a defendant was not properly informed of his postrelease control sentence, "only that part of the sentence dealing with postrelease control should be voided: the remaining aspects of the conviction and sentence should not be disturbed." *State v. Wells,* 7th Dist. No. 14 JE 5, 2014-Ohio-5504, ¶6, citing *Fischer, supra.*

**{¶38}** While the trial court properly informed Appellant that he would be subject to a five-year postrelease control period, the court clearly failed, at both the hearing and within the entry, to inform Appellant of the possible sanctions that can be levied if his postrelease control sentence is violated. On this basis, we remand the matter to the trial court with instructions to properly advise Appellant of his postrelease control sentence.

**{¶39}** Also mentioned at oral argument was an issue regarding the constitutionality of sentencing Appellant for gross sexual imposition. Recently the Ohio Supreme Court held that a mandatory GSI sentence was unconstitutional. *State v. Bevly,* 142 Ohio St.3d 41, 2015-Ohio-475, 27 N.E.3d 516, paragraph two of the syllabus. We note that in this case the record contains nothing which would lead

us to believe the trial court was sentencing Appellant under the mistaken impression that such a sentence was mandatory in nature. *Bevly* does not apply to this matter and the sentence was not erroneous in this regard.

**{¶40}** Finally, we *sua sponte* raise an error regarding the July 12, 2013 resentencing entry. The trial court labeled counts one through five as aggravated robbery counts. However, Appellant was charged with only three aggravated robbery counts. The fourth and fifth counts were for aggravated burglary. Accordingly, on remand the trial court should revisit sentencing on this basis, also, and at least correct the sentencing entry.

**{¶41}** Having addressed all additional arguments that arose during oral argument, we now turn to Appellant's second assignment of error. Appellant contends that the trial court improperly sentenced him to a longer period of incarceration than similarly situated defendants in the region have received. Appellant notes that his two co-defendants have each been sentenced to only seven years. Appellant also describes a defendant in a separate and unrelated case who was sentenced to fifteen years for similar, but not identical convictions. Appellant urges that his sentence is 700% of the term to which the state initially agreed and is eight to sixteen times that which his co-defendants received.

**{¶42}** The Seventh District is currently split as to the standard of review in felony sentencing cases. See *State v. Hill,* 7th Dist. No. 13 MA 1, 2014-Ohio-919 (Vukovich, J., Donofrio, J., majority with DeGenaro, J., concurring in judgment only with concurring in judgment only opinion; *State v. Wellington,* 7th Dist. No. 14 MA

115, 2015-Ohio-1359 (Robb, J., DeGenaro, J., majority with Donofrio, J. concurring in judgment only with concurring in judgment only opinion).

**{¶43}** The approach adopted in *Hill* applied the two-prong test set forth in the plurality opinion in *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶26. *Hill* at ¶7-20. Under *Kalish,* a court first determines whether the sentence is "clearly and convincingly contrary to law." *Kalish* at ¶26 (O'Connor, J. plurality opinion). If the sentence is not contrary to law, a reviewing court determines whether the trial court abused its discretion in ordering a sentence within the statutory range. *Id.* at ¶17.

**{¶44}** On the other hand, as adopted in *Wellington,* a court on review will strictly follow R.C. 2953.08(G), which does not include an abuse of discretion determination. *Wellington* at ¶9-14. R.C. 2953.08(G) solely looks to whether a felony sentence is clearly and convincingly contrary to law. *Id.*

**{¶45}** The issue of which standard of review an appellate court must undertake is currently before the Ohio Supreme Court. *State v. Marcum,* 141 Ohio St.3d 1453, 2015-Ohio-239, 23 N.E.3d 1453. The Court accepted the certified question "[D]oes the test outlined by the [c]ourt in State v. Kalish apply in reviewing felony sentences after the passage of R.C. 2953.08(G)?" *Id.*

**{¶46}** In the present matter, regardless which standard is used, the result as to Appellant's second assignment of error is the same; his sentence is not disproportionate.

**{¶47}** In this assignment, Appellant solely challenges the trial court's compliance with R.C. 2929.11(B), thus we need not discuss whether the trial court abused its discretion in sentencing Appellant. Pursuant to R.C. 2929.11(B):

A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

**{¶48}** In *Williams I,* we noted that Appellant failed to raise the issue of disproportionate sentences at the trial court. We found, then, that the issue had been waived. However, we determined that the trial court appropriately relied on the fact that Appellant had violated the terms of his agreement in determining his sentence. Based on the totality of the circumstances, the sentence appeared reasonable.

**{¶49}** We remanded this matter for resentencing based on a separate error. Even though we have once partially addressed Appellant's disproportionality argument in *Williams I,* he is not barred from reasserting this argument. When a defendant is resentenced, "[t]he doctrine of res judicata does not bar a defendant from objecting to issues that arise at the resentencing hearing or from the resulting sentence." *State v. Wilson,* 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶30.

{¶50} At the resentencing hearing, Appellant specifically raised this issue and provided the court with general information about the sentences received by Appellant's co-defendants and another allegedly similarly situated local defendant. The trial court acknowledged the statute but noted that because each case involves a different set of facts and circumstances, trial courts are provided with a sentencing range to assist in their determination of a sentence.

{¶51} Relevant to this case, two issues are pertinent. First, whether Appellant's offenses and criminal record appear to place him among similarly situated defendants within the region who received a lesser sentence. Second, whether the facts of this case distinguish Appellant from such a group.

{¶52} We must first address whether Appellant provided evidence of similarly situated defendants and that he received a sentence disproportionate to those defendants. Appellant has done neither. The Eighth District has stated that "[a] defendant alleging disproportionality in felony sentencing has the burden of producing evidence to 'indicate that his sentence is directly disproportionate to sentence given to other offenders with similar records who have committed these offenses.' " *State v. Wilson,* 8th Dist. No. 99331, 2013-Ohio-3915, ¶16, citing *State v. Breeden,* 8th Dist. No. 84663, 2005-Ohio-510, ¶81.

{¶53} Appellant claims that his circumstances are similar to the three defendants he discusses because they committed similar offenses. However, this is not the only factor to consider. Appellant has presented no evidence that his criminal record is similar to any of the defendants he uses as examples. In fact, although the

burden of proof falls on Appellant, it was the prosecutor who provided the details of Appellant's extensive criminal record and noted that it is significantly greater than his co-defendants. Appellant did not rebut this claim. As Appellant has failed to provide any evidence that his criminal record is similar to the defendants with whom he aligns himself, he has not shown that he is similarly situated to these defendants.

{¶54} Even if Appellant had offered some evidence, this record demonstrates that there are substantial differences between Appellant's actions and those of the other defendants. Importantly, Appellant and his co-defendants initially were to receive a similar sentence as a result of their respective plea agreements. Appellant clearly had an opportunity to receive a sentence in line with his co-defendants. Appellant, however, violated the terms of the plea agreement. Due to his own actions, he received a more significant sentence. The record clearly establishes that Appellant had notice that any violation of his plea agreement would likely result in a greater sentence.

{¶55} At the sentencing hearing, the prosecutor commented that "[i]f he in any way violates the terms of his GPS, if he goes missing for an hour, ten minutes, or one minute, if he turns it off, if he cuts it off, if he flees * * * the state will rescind the recommendation, will recommend the maximum sentence, which is in excess of 80 years." (10/28/10 Plea Hrg. Tr., p. 4.) His attorney acknowledged that the plea deal was contingent on Appellant's compliance with all the terms of the bargain several times during the plea hearing. His attorney stated: "[w]e understand, Your Honor, a sentence of imprisonment will be invoked for a minimum of 13 years, and hopefully

that will be the sentence, obviously governed by [Appellant's] conduct." (10/28/10 Plea Hrg. Tr., p. 12.) And he later said: "[w]e're not looking to trip and fall here * * * if the coffee can falls off the shelf, it's a violation. Everybody's using common sense. [Appellant] knows he owes you a duty of being prompt, he owes you a duty of not violating house arrest. Obviously, that goes without saying." (10/28/10 Plea Hrg. Tr., p. 14.)

**{¶56}** The trial court acknowledged the conditions of the plea agreement: "[a]nd I sincerely, sincerely hope you abide by the terms and conditions of that house arrest because 13 years versus 95 years is a big difference, and do not think that for one minute this court would not impose that long of a period of time." (10/28/10 Plea Hrg. Tr., p. 16.) The trial court judge asked Appellant if he understood this, to which he responded in the affirmative.

**{¶57}** Appellant, who was present at the hearing, clearly knew that if he violated the terms of his plea agreement the state would recommend the maximum sentence. Appellant was specifically told that if he fled the jurisdiction, he would be subject to the maximum sentence. He was also warned by the trial court that this sentence was available if Appellant violated the plea agreement. The trial court asked Appellant if he understood and he stated that he did. Further, the plea agreement, which was signed by Appellant, contained a written notice that the offer was expressly contingent on compliance with its terms.

**{¶58}** Despite these warnings, Appellant fled the state and was found in Philadelphia, Pennsylvania. He failed to report to CCA on two occasions, which is

also a direct violation of the terms of his plea agreement. He removed his EMHA bracelet, again in violation of the terms of his plea agreement. This record clearly demonstrates that the facts and circumstances of this case are significantly different from the other cases alluded to by Appellant. Appellant has not shown that he is similarly situated with lesser-sentenced defendants or that he received a disproportionate sentence. Accordingly, Appellant's second assignment of error is without merit and the judgment of the trial court is affirmed on the issue of the proportionality of his sentence. However, we remand the issues of consecutive sentences, postrelease control, and the incorrect naming of his crimes on the sentencing entry to the trial court for further proceedings consistent with this Opinion.

## Conclusion

{¶59} As the record supports a finding that the kidnapping charge as to the female victim was not merely incidental to her sexual assault, the offenses are not allied and are not subject to merger. However, because of the incomplete hearing on the matter, the record is less clear as to whether the kidnapping and robbery charges surrounding any of the three victims are allied offenses subject to merger. As to sentencing, Appellant has not shown that he is similarly situated with defendants who received a lesser sentence. Even so, he had an opportunity to receive a lesser sentence, but lost that opportunity due to his own actions. However, we remand the matter due to other sentencing issues, specifically: consecutive sentences, postrelease control and errors in the titles of the charges on which Appellant was convicted for further proceedings consistent with this Opinion.

Donofrio, P.J., concurs.

Robb, J., concurs.