[Cite as *State v. Bishop*, 2019-Ohio-2720.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JAMES K. BISHOP,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 JE 0005**

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 17-CR-143

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jane M. Hanlin,* Jefferson County Prosecutor and *Atty. Edward L. Littlejohn, Jr.*, Assistant Prosecuting Attorney, Jefferson County Justice Center, 16001 State Route 7, Steubenville, Ohio 43952, for Plaintiff-Appellee.

*Atty. Scott C. Essad*, 721 Boardman-Poland Road, Suite 201, Youngstown, Ohio 44512, for Defendant-Appellant.

Dated: June 28, 2019

---

**WAITE, P.J.**

**{¶1}** Appellant James K. Bishop appeals the January 18, 2018 judgment entry convicting him of various offenses stemming from a burglary. Appellant argues that his sentence is disproportionate to defendants who have committed similar crimes. He also argues that the trial court's imposition of consecutive sentences is contrary to law. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

**{¶2}** Appellant was employed by Tom Brown Construction, owned by Mr. Brown, in early November of 2016. (5/14/18 Trial Tr., p. 108.) The company was hired to complete a project inside the victim's garage. On the first day of construction, Brown purchased a tool that belonged to the victim's recently deceased husband for $100. Brown gave the victim five twenty-dollar bills as payment. While the victim and Brown were completing the transaction, Appellant surprised the victim by exiting the house from the kitchen, as she was unaware that he had been inside her home. (5/14/18 Trial Tr., p. 135.) At some point, Brown left the job, leaving Appellant and another employee at the house to complete the work.

**{¶3}** During construction, Appellant and the other employee asked the victim to use her restroom. She granted them permission. The men used the restroom and returned to the garage to continue their work. Sometime thereafter, the victim went into her garage to check on the progress of the work, but did not see Appellant. The other employee informed her that Appellant had gone back inside to use the restroom. There are only two doors into the victim's house: one in the kitchen leading to a patio and one in the front of the house leading to the front yard. As she was inquiring, Appellant

suddenly exited the house through the kitchen door. The victim thought this was odd. She knew he used the front door to enter the house, because she had just left her kitchen and did not see him enter through the kitchen. The victim said she was upset that Appellant had entered her house without her permission, but did not address this issue with him. Sometime thereafter, the victim again checked on the work and did not see Appellant. The other employee explained that he had, once again, gone to use the bathroom. Appellant returned to the garage shortly thereafter.

{¶4} After Appellant and the other employee left for the day, the victim realized she could not find the money Brown had given her for the tool. When she entered her bedroom, she noticed that her jewelry box was open and its contents had been removed. She went into her closet to check a lock box that contained her deceased husband's jewelry and found that the box had been pried open and its contents had been removed. The victim called Brown and gave him this information.

{¶5} At first, Brown could not make contact with Appellant, who did not go to work at the victim's house the next day. Eventually Appellant contacted Brown to ask for his paycheck. Brown accused Appellant of taking the items, and he denied these allegations. Brown persisted, informing Appellant that the stolen jewelry was worth more than $17,000. Appellant responded that the victim was exaggerating the value of the items. Brown construed this statement by Appellant as a confession.

{¶6} Officer Jack Henderson of the Cross Creek Police Department was assigned to investigate. Initially, he, too, could not locate Appellant. After several days passed, Officer Henderson contacted Appellant by phone and learned that he was in Michigan working as a boilermaker. On investigation, Officer Henderson discovered that

Appellant had pawned several items in East Liverpool and Toledo that matched the description of the victim's missing items. Appellant appears in the pawn shops' videos and a copy of his driver's license was attached to their receipts.

{¶7} On November 8, 2017, a grand jury indicted Appellant on: one count of theft, a felony of the fourth degree in violation of R.C. 2913.02(A)(1), (B)(2); one count of receiving stolen property, a felony of the fifth degree in violation of R.C. 2913.51(A), (C); one count of burglary, a felony of the second degree in violation of R.C. 2911.12(A)(1), (D); and one count of safe cracking, a felony of the fourth degree in violation of R.C. 2911.31(A), (B).

{¶8} Jury trial commenced on January 9, 2018. Appellant was found guilty on all charges, however, the jury determined that the state did not prove the value of the jewelry was in excess of $17,000. Thus, the conviction for theft was reduced from a felony of the fourth degree to a felony of the fifth degree.

{¶9} On January 18, 2018, the trial court sentenced Appellant to one year of incarceration on the theft conviction, one year for receiving stolen property, eighteen months for safecracking, and eight years for burglary. The trial court ordered the sentences for theft and receiving stolen property to run concurrently with one another and concurrent with the safecracking and burglary sentences. The safecracking and burglary sentences were ordered to run consecutively. Appellant's aggregate total sentence was nine and one half years. A mandatory three-year postrelease control term was imposed and the court credited Appellant with 110 days of time served. This timely appeal followed.

ASSIGNMENT OF ERROR

THE TRIAL COURT, IN CONTRAVENTION TO THE OHIO REVISED CODE AND CASE LAW, ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES.

{¶10} We note that Appellant raises one assignment of error addressing the trial court's imposition of consecutive sentences. However, within this assignment of error Appellant also argues that the trial court improperly considered facts related to the victim during sentencing and erroneously determined that he lacked remorse. At oral argument, Appellant focused his argument on whether his sentence was disproportionate to what a similar defendant might receive with a less sympathetic victim. This argument attacks his sentence generally, not the imposition of consecutive sentences. For ease of understanding, Appellant's arguments are divided into general sentencing issues and consecutive sentencing issues, where they will be separately addressed.

*Sentence*

{¶11} Appellant argues that the trial court focused its analysis on the victim and found her to be sympathetic due to the recent death of her husband, her age, and that she cares for rescue dogs. Appellant urges that as the victim was not chosen because of her age or the recent death of her husband, the court should not be permitted to take those factors into consideration. Since the court used them in determining his sentence, he believes that his sentence is disproportionate to a sentence a defendant with a less sympathetic victim would receive. Appellant also contends that since he did not speak more than a few one-word statements to the trial court at sentencing and did not testify at trial, the court could not have truly determined whether he felt remorse.

Case No. 18 JE 0005

**{¶12}** The state responds that the record demonstrates the trial court conducted an appropriate review of the R.C. 2919.12(B) factors.

**{¶13}** Pursuant to R.C. 2929.12(B):

The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

(6) The offender's relationship with the victim facilitated the offense.

(7) The offender committed the offense for hire or as a part of an organized criminal activity.

(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

**{¶14}** R.C. 2929.12(B) specifically states that "the sentencing court shall consider all of the following that apply regarding the offender, the offense, or the *victim.*" (Emphasis added.) Contrary to Appellant's arguments, a trial court is required to consider some facts regarding the victim, specifically those found within R.C. 2929.12(B)(1), (2). Thus, consideration of these cannot give rise to a claim of disproportionate sentencing merely based on consideration of the requisite factors.

**{¶15}** The trial court conducted a detailed R.C. 2929.12(B) analysis at the sentencing hearing and within its sentencing entry. R.C. 2929.12(B)(1) addresses the physical or emotion harm to the victim. At the hearing, the trial court stated:

The injury from the victim -- well, she's 63 years of age and a widow, recently lost her husband, didn't need this headache. * * * So, the victim did suffer serious psychological harm as evidenced by the meds she's taking and just the way she testified on the stand. I mean, I could tell from the way she testified on the stand that this was a big problem for her. This was not just some little thing that happened and that she was greatly and long-term affected by it.

(1/17/18 Sentencing Hrg. Tr., p. 11.)

{¶16} R.C. 2929.12(B)(2) addresses the economic harm suffered by the victim. The trial court acknowledged the jury found that the value of jewelry was between $1,000 and $7,500. The court also noted that the victim's jewelry was unique, because it had been custom designed by her recently deceased husband and could not be replicated. Some of the jewelry belonged to the victim's husband and had sentimental value to the victim. As all of these facts are relevant to an analysis pursuant to R.C. 2929.12(B) Appellant cannot show that consideration of these factors resulted in a disproportionate sentence.

{¶17} Regarding Appellant's remorse, the trial court relied on the fact that Appellant did not return to the victim's house for work the day after the burglary, and his only response to Brown's questioning was that the victim had exaggerated the value of the items. At the sentencing hearing, the following conversation occurred between Appellant and the court.

THE COURT: I've already mentioned that and I saw no -- genuine remorse anywhere. I mean, if it's there I don't see it.

[APPELLANT]: For something I didn't do.

THE COURT: Excuse me?

[APPELLANT]: For something I did not do.

THE COURT: And that's okay if you want to take that position but a jury of 12 found beyond a reasonable doubt that you did. Your employer showed up. This trial was over the first 30 seconds after it started when you employer called and -- or said -- testified that he called you.

[APPELLANT]: That was a lie.

THE COURT: That was a lie? Why would he lie?

[APPELLANT]: Because I never talked to him on the phone. It was all text messages.

THE COURT: Okay. Okay. Well, then good. Then I can underscore that shows genuine -- or shows no genuine remorse. It was kind of iffy with me before and now it's for sure.

(1/17/18 Sentencing Hrg. Tr., pp. 12-13.)

{¶18} Contrary to Appellant's argument, the trial court highlighted the fact that Appellant argued with the judge over the method of his conversation with Brown and did

not contest the fact that he confessed. The court interpreted Appellant's focus on a trivial fact such as the method of conversation, text instead of telephone, rather than on his apparent admission to his employer showed that Appellant lacked remorse. The trial court also relied on Appellant's claim during the sentencing hearing that the video evidence of him pawning the jewelry was fabricated by law enforcement showed failure to take responsibility and hence, no remorse.

**{¶19}** Based on this record, Appellant has not demonstrated that his sentence was disproportionate because of the trial court's discussion of the victim in this case. Further, there is nothing within the record to demonstrate that the trial court's finding in regard to Appellant's lack of remorse was improper. As such, Appellant's arguments are without merit and are overruled.

*Consecutive Sentences*

**{¶20}** Appellant also contends that the trial court's imposition of consecutive sentences is contrary to law. Appellant first argues that the trial court erroneously imposed consecutive sentences for the burglary and safecracking convictions. Appellant argues that the burglary and safecracking offenses do not amount to a "course of conduct" pursuant to R.C. 2929.14(C)(4). Appellant next argues that, although the trial court used the "magic words," it did not meaningfully make a finding that consecutive sentences were not disproportionate to the seriousness of his conduct and to the danger posed to the public. Appellant argues that the trial court's findings were "sparse," and were focused on the victim rather than Appellant.

**{¶21}** An appellate court is permitted to review a felony sentence to determine if it is contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d

Case No. 18 JE 0005

1231, ¶ 1. Pursuant to R.C. 2929.14(C)(4), before a trial court can impose consecutive sentences on a defendant, the court must find:

> [T]hat the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶22} A trial court judge must make the R.C. 2929.14(C)(4) findings at the sentencing hearing and must additionally incorporate the findings into the sentencing

entry. *State v. Williams*, 2015-Ohio-4100, 43 N.E.3d 797 (7th Dist.) ¶ 33-34, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.  A court need not state reasons to support its finding nor is it required to use any "magic" or "talismanic" words, so long as it is apparent from the record that the court conducted the proper analysis.  *Id.*, citing *State v. Jones*, 7th Dist. Mahoning No. 13 MA 101, 2014-Ohio-2248, ¶ 6*; State v. Verity*, 7th Dist. Mahoning No. 12 MA 139, 2013-Ohio-1158, ¶ 28-29.

**{¶23}**  The record reflects that the trial court engaged in detailed analysis regarding its R.C. 2929.14(C)(4) findings.  At the hearing, the court stated:

> And so I also find that consecutive sentences are necessary to protect the public from future crime and to punish this offender and that consecutive sentences are not disproportionate to the seriousness of his conduct and the danger he poses to the public and that the -- these offenses were created or done while he was on a community control sanction out of -- in three cases in two courts and that the -- the harm caused was great and unusual and that no single term of prison can – can account for that and that's particularly due to her age, the recent loss of her husband and the stuff that you stole and the sentimental value that it had with her and the fact that she's on all these meds now.  You really have wrecked her life.

(1/17/18 Sentencing Hrg. Tr., p. 13.)

**{¶24}**  Contrary to Appellant's contentions, the trial court did not rely on a finding that consecutive sentences were necessary because the offenses were committed as part of a course of conduct.  Instead, the court made a finding under R.C.

2929.14(C)(4)(a), that Appellant was on probation for three other offenses at the time this offense was committed.

{¶25} Two of the three cases mentioned by the judge originated from Toronto Municipal Court and involved an incident where Appellant struck his girlfriend with his car in the process of taking their child from her. He then engaged in a police chase that reached speeds of 90 mph. He received probation due to that incident, but he twice violated probation, which resulted in a prison term. Appellant's criminal history was also discussed at the sentencing hearing: forty-five traffic offenses, criminal trespass (2016), possession of drug abuse instruments (2014), attempted drug abuse instruments (2013), aggravated vehicular assault and failure to comply (2013), endangering children (2012), misdemeanor theft (2011), driving without an operator's license (2011), disorderly conduct (2010), and domestic violence (2010).

{¶26} The court addressed the unusual nature of the harm, including the fact that the victim could not recover most of the stolen jewelry, designed by her recently deceased husband. In addition to the trial court's statements at the sentencing hearing, the court detailed its findings in the sentencing entry.

{¶27} As such, the trial court properly made the requisite R.C. 2929.14(C)(4) findings before it imposed consecutive sentences. Accordingly, Appellant's sole assignment of error is without merit and is overruled.

Conclusion

{¶28} Appellant argues that the trial court's imposition of consecutive sentences in this matter is contrary to law. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Robb, J., concurs.

[Cite as *State v. Bishop*, 2019-Ohio-2720.]

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**