[Cite as *State v. Sargent*, 2025-Ohio-2579.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SCOTT STEVEN SARGENT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 MA 0005

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2024 CR 00258

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed in part. Remanded in part.

---

*Atty. Lynn Maro,* Mahoning County Prosecutor, *Atty. Ralph M. Rivera* and *Atty. Kristie Weibling,* Assistant Prosecuting Attorneys, for Plaintiff-Appellee and

*Atty. Lydia Evelyn Spragin,* for Defendant-Appellant.

Dated: July 18, 2025

---

**DICKEY, J.**

{¶1}    Appellant, Scott Steven Sargent, appeals his convictions and consecutive sentences for ten counts of pandering sexually oriented matter involving a minor or impaired person, violations of R.C. 2907.322(A)(5) (knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor or impaired person participating or engaging in sexual activity, masturbation, or bestiality), felonies of the fourth degree, following his entry of guilty pleas in the Mahoning County Court of Common Pleas. The trial court imposed nine seven-month sentences, and one nine-month sentence, all sentences to be served consecutively, for an aggregate sentence of six years.

{¶2}    Appellant advances four assignments of error, but he asserts additional arguments in his five issues presented for review in the body of his appellate brief. Appellant argues for the first time on appeal that his convictions are allied offenses of similar import that should have been merged at sentencing. Appellant challenges the validity of his plea and sentence, and asserts an ineffective assistance of counsel claim, based on the trial court's failure to find Appellant's convictions were allied offenses of similar import. Next, Appellant argues the trial court erred in imposing consecutive sentences.   Both the allied offenses and consecutive sentences arguments are predicated upon Appellant's contention that there is insufficient evidence in the record regarding the content of the ten images/videos that provide the basis for his convictions and sentences.   Third, Appellant argues the trial court failed to consider his military service as a mitigating factor in violation of R.C. 2929.11 and R.C. 2929.12.   Fourth, Appellant argues there is insufficient evidence in the record to support his classification as a Tier II sex offender.   Fifth, Appellant contends he received insufficient notice of his statutory obligations regarding his classification as a Tier II sex offender at his plea and sentencing hearings.   Finally, Appellant challenges omissions in the sex offender entry issued by the trial court.

{¶3}    Appellant advanced an argument in his appellate brief based on incorrect information regarding Appellant's charges and convictions contained in the public docket of the common pleas court.   At oral argument, Appellant's counsel stipulated the argument was moot.   In the interim between the filing of Appellant's brief and oral

argument, the clerk of courts corrected the information in the public docket in response to a request by appellate counsel.

{¶4} For the following reasons, we find no plain error regarding the trial court's failure to merge Appellant's sentences, as the ten crimes for which he was convicted were committed with separate animus. The evidence in the record establishes the ten images or videos that form the basis for his individual convictions depict multiple prepubescent girls engaging in sexual acts with adults. We further find the trial court's imposition of consecutive sentences is supported by the record and not contrary to law. Likewise, there is sufficient evidence in the record to support Appellant's classification as a Tier II sex offender. With respect to the statutorily-mandated notice regarding the sex offender registry, we find the trial court partially complied with the notice requirements at the plea hearing, and Appellant has failed to demonstrate he would not have entered his plea had the trial court provided a more thorough notice. Finally, we find the notice provided by the trial court at the sentencing hearing regarding Appellant's statutory obligation to register as a sex offender was sufficient, and the sex offender entry conforms to the requirements in R.C. 2950.03. However, we remand this matter for a nunc pro tunc order providing the missing information (sentencing date and check box reflecting that Appellant was incarcerated) in the sex offender entry, which shall be distributed in accordance with R.C. 2950.03(B)(3).

## FACTS AND PROCEDURAL HISTORY

{¶5} On May 30, 2024, Appellant, then age 62, was indicted for 25 counts of pandering sexually oriented matter involving a minor or impaired person in violation of R.C. 2907.322(A)(5), all felonies of the fourth degree. The charges in the indictment were predicated upon a search warrant executed by law enforcement at Appellant's residence on or about January 11, 2024, which yielded a flash drive and computer containing over 1,500 graphic images and seven videos depicting child pornography. The computer revealed internet searches using the following search terms, "Preteen Nude Photos," "Young Girls that Really Like to Fuck," "Really Young Girls that Like to Fuck," "Really Preteen Girls that Like to Fuck," and "Nude Loleta [sic] Photos." (1/9/25 Sentencing Hrg. Tr., p. 3-4.)

**{¶6}** According to the state, the images "depict children in many cases being sexually assaulted by adults." (*Id.* at p. 5.) The state described the images of prepubescent children as "horrifying and disgusting." (*Id.* at p. 4.) The trial court represented the seven videos "depict[ed] images of prepubescent females performing sexual intercourse with adults." (*Id.* at p. 15-16.)

**{¶7}** Each of the 25 counts allege the crime occurred on or about January 11, 2024, the day that the search was conducted. The record does not contain any specific description of the content of the images/videos underlying the ten counts to which Appellant entered his guilty plea.

**{¶8}** On August 1, 2024, Appellant filed a motion for pretrial sex offender risk assessment, which was granted by the trial court. The assessment was conducted by Vincent Arduin at the Forensic Psychiatric Center of Northeast Ohio ("assessment"). In the assessment, Appellant claimed he was searching for "regular" pornography, but images of child pornography started "popping up." He conceded child pornography "caught his interest" and he masturbated to the images of "young bodies." Appellant could not recall his internet search terms, but when confronted by Arduin, Appellant stated he believed the search term "Loleta" [sic] would generate images of Latin women. Appellant asserted he viewed child pornography during the year he was separated from his former wife (they divorced then reconciled without remarrying), beginning in the latter part of 2022. (Assessment, p. 6.)

**{¶9}** Arduin's risk assessment score was zero based on the following calculation: minus two for Appellant's age, plus one for a prior sex offense, and plus one for prior contact with the criminal justice system. With respect to Appellant's age, Arduin observed Appellant is at the age when sexual recidivism sharply declines. (Assessment, p. 6-7.) Further, Arduin predicated his conclusion regarding recidivism based on Appellant's ability to maintain enduring age-appropriate relationships that "run counter to a persistent pedophilic interest." (Assessment, p. 7.)

**{¶10}** Despite Arduin's acknowledgement Appellant was a "low-moderate" risk to reoffend, Arduin described Appellant's motivation for treatment as "somewhat below average and a great deal lower than average for individuals being seen in a treatment setting." (Sentencing Hrg. Tr*.,* p. 17.) Arduin observed, "[Appellant is] satisfied with

himself as he is, is not experiencing distress, and he sees little need for changes in his behavior." (*Id.* at p. 17-18.)

**{¶11}** At a plea hearing conducted on October 28, 2024, Appellant entered guilty pleas to counts one through ten of the indictment, in exchange for the dismissal of the remaining fifteen charges, and the state's recommendation of an eight-year prison sentence.

**{¶12}** With respect to the sex offender classification, the trial court advised:

> In addition, if you plead guilty here today, as part of your sentencing you would be required to register as a tier two sex offender, so do you understand what that means?
>
> . . .
>
> It means you would have to report your location or your residence to the sheriff's department in the county that you reside every six months for 25 years. Does that sound right?

(10/28/24 Plea Hrg. Tr., p. 10.) Appellant stated on the record that he understood the sex-offender registration requirements.

**{¶13}** At the sentencing hearing on January 9, 2025, defense counsel requested a one-month jail sentence, based on Appellant's low recidivism score and his voluntary efforts at rehabilitation. Further, defense counsel argued in a sentencing memorandum that Appellant had never physically touched a child.

**{¶14}** Defense counsel explained Appellant is a social security disability recipient ($1,964.80/month), and a sentence greater than 30 days would result in a suspension of his government benefits. Appellant's benefits would terminate with the imposition of a sentence greater than one year. Appellant is responsible for the mortgage on the residence he shares with his girlfriend/former wife, therefore incarceration for more than thirty days would displace them.

**{¶15}** According to the sentencing memorandum, Appellant committed the crimes in a state of "mental despondency," due to his inability to work (Appellant suffered a heart attack in 2023) and "relationship troubles." (Sentencing Hrg. Tr., p. 14-15.) Defense

counsel asserted, "[Appellant] has already learned his lesson. I don't think that a year to eight years is going to teach him any more of a lesson that 30 days might." (*Id.* at p. 10.)

{¶16} Prior to imposing sentence, the trial court observed Appellant admitted to Arduin that Appellant had pleaded guilty to two counts of gross sexual imposition. The victim was his daughter. The convictions were not included in the Presentence Investigation Report ("PSI"). Nonetheless, the trial court reasoned Appellant's statement to Arduin directly contradicted defense counsel's argument that Appellant's predilection for prepubescent girls never caused him to physically assault a child. The trial court further observed Appellant sought counseling because charges were looming, not because he had an earnest desire to amend his life.

{¶17} We recognize the trial court misstated Appellant's disclosure to Arduin. Specifically, Appellant told Arduin that Appellant's brother was currently incarcerated for molesting his own daughter and had previously attempted to molest Appellant's daughter. The assessment reads in relevant part, "[Appellant] took a gross sexual imposition plea in that case, although he denied any sexually abusive behavior. He said he was placed on probation for one year and successfully completed that." (Assessment, p. 5.) Consequently, Appellant was convicted of one count of gross sexual imposition committed against either his daughter or his niece.

{¶18} The PSI listed several traffic violations, but only one conviction for larceny of a motor vehicle in Gardner, Massachusetts. Although the probation officer recognized the risk assessment factors resulted in a finding of "low risk," the officer observed the seriousness of the crimes provided a reason to override the recidivism score.

{¶19} The trial court imposed the following sentence:

> The sentences imposed in Counts One through Ten shall be served consecutively, for a total of 72 months, or six years in the Ohio Department of Rehabilitation and Corrections.

> Pursuant to Ohio Revised Code Section 2929.14(C)(4), consecutive sentences are necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the

seriousness of the offender's conduct and to the danger the offender poses to the public.

And the Court also finds that at least two of the multiple offenses were committed as part of one or more courses of conduct, and that the harm caused by two or more of the multiple offenses committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

[The] Court finds that the defendant, pursuant to Revised Code Section 2950.04, has a duty to register as a Tier II sex offender, which requires him to register every six months for 25 years with the sheriff's department where he resides, or child victim offender; and he shall sign a separate entry to that effect.

(1/9/25 Sentencing Hrg. Tr., p. 20-21.)

**{¶20}** The trial court confirmed defense counsel had reviewed the sex offender entry with Appellant. Appellant confirmed he had executed the entry and understood its content.

**{¶21}** At page two of the sex offender entry, the trial court must denote with an "x" whether a term of imprisonment or community control sanction was imposed. The box denoting the imposition of a prison sentence contained an "x," which was obscured with correction tape. The sex offender entry does not contain Appellant's sentencing date, as there is an incomplete sentence that reads, "[t]he Court, pursuant to its sentencing order of:          " The sex offender entry was executed and dated by Appellant, his counsel, and the trial court on the date of sentencing.

**{¶22}** This timely appeal followed.

## ANALYSIS

**{¶23}** Several of Appellant's arguments were advanced randomly in his brief and do not correspond with an assignment of error. The arguments with no corresponding

assignment of error are addressed within the first assignment of error. Appellant's arguments regarding the sex-offender registry notice requirements are addressed out-of-order and grouped together for clarity of analysis and judicial economy.

## ASSIGNMENT OF ERROR NO. 1

**THE COUNTS IN THE INDICTMENT AS PRESENTED WERE NOT TREATED AS ALLIED OFFENSES.**

**{¶24}** R.C. 2941.25 codifies the double jeopardy protection against multiple punishments for the same offense. *In re A.G.*, 2016-Ohio-3306, ¶ 11; *State v. Ruff*, 2015-Ohio-995, ¶ 10, 12. It states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶25}** "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Ruff*, 2015-Ohio-995, paragraph three of the syllabus. "An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *Id.* at ¶ 31.

**{¶26}** Where a defendant's conduct harms more than one person, the harm to each person is separate and the defendant can be convicted on multiple counts. *Id.* at ¶ 26. "[A] defendant's conduct that constitutes two or more offenses against a single victim

can support multiple convictions if the harm that results from each offense is separate and identifiable harm from the harm of the other offense." *Id.*

**{¶27}** The Ohio Supreme Court recognized that analyzing whether offenses are of dissimilar import "may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct – an inherently subjective determination." *Id.* at ¶ 32.

**{¶28}** While the defendant bears the burden of establishing entitlement to having offenses merged under R.C. 2941.25, an appellate court conducts a de novo review of the trial court's decision regarding merger of offenses. *State v. Washington*, 2013-Ohio-4982, ¶ 18. The imposition of multiple sentences for allied offenses of similar import is plain error. *State v. Underwood*, 2010-Ohio-1, ¶ 31, citing *State v. Yarbrough*, 2004-Ohio-6087, ¶ 96-102.

**{¶29}** We have soundly rejected the argument that multiple charges of pandering sexually oriented material involving a minor predicated upon multiple images are allied offenses of similar import. In *State v. Bosley*, 2017-Ohio-7643 (7th Dist.), the appellant obtained ninety-seven files of child pornography and, as evidenced by the file names, the victims consisted of at least four different children between the ages of two and twelve. *Bosley* at ¶ 11. We reasoned Bosley intended to download multiple files even if his goal was accomplished by way of a single mass download. The independent nature of Bosley's crimes was further established by the fact that he pleaded guilty to separate counts. *Id.* at ¶ 12.

**{¶30}** In *State v. Lucicosky*, 2017-Ohio-2960 (7th Dist.)*,* the state, in arguing for a ten-year sentence, cited evidence that the National Center for Missing and Exploited Children was able to identify 27 children in Appellant's collection of child pornography, and each of those children were victims. *Lucicosky* at ¶ 5. Like the indictment in the above-captioned appeal, the indictment in *Lucicosky* alleged each count occurred on the same date.

**{¶31}** In *Bosley* and *Lucicosky*, we adopted the reasoning of our sister appellate districts regarding multiple downloads of child pornography. The Eighth District in *State v. Duhamel*, 2015-Ohio-3145 (8th Dist.), held the act of downloading "each file of child

pornography" was done with a separate animus and "each downloaded file was a crime against a separate victim or victims." *Id.* at ¶ 62. The *Duhamel* Court held "[e]very video or image of child pornography on the internet constitutes a permanent record of that particular child's sexual abuse. The harm caused by these videos is exacerbated by their circulation." *Id.* at ¶ 54. The Eighth District further observed that images depicting rape or abuse are far more harmful than solitary photographs of nude children. *Id.* at ¶ 55.

**{¶32}** The Tenth District in *State v. Eal*, 2012-Ohio-1373 (10th Dist.), similarly held each individual image represents a "new and distinct crime" and the mere fact that the downloads occurred in quick succession did not " 'mean that they were not committed separately or with separate animus.' " *Id.* at ¶ 93, quoting *State v. Blanchard*, 2009-Ohio-1357, ¶ 12 (8th Dist.). In *State v. Mannarino*, 2013-Ohio-1795 (8th Dist.), the Eighth District held that two counts of pandering sexually oriented matter involving a minor under R.C. 2907.322(A)(1) and (A)(2) were not allied offenses of similar import where each charge was supported by a separate image or video. *Id.* at ¶ 53.

**{¶33}** The Eleventh District has likewise held a single download of multiple images may result in separate charges for each downloaded image. In *State v. Lautanen*, 2023-Ohio-1945 (11th Dist.), the appellant committed a single act, asking a clerk at a mobile telephone store to transfer the contents of an old mobile device to a new mobile device. The clerk used a computer application that logged into the appellant's Google Cloud, which contained fifteen pornographic of prepubescent girls. Despite the fact that the appellant's crime did not involve downloading each individual images, the Eleventh District concluded his conduct constituted fifteen separate offenses because each count was supported by a separate image and each picture represented a separate and identifiable harm. *Id*. at ¶ 104.

**{¶34}** Nonetheless, Appellant argues his plea was not knowingly entered and his sentence is contrary to law "[w]ithout the presentations of facts or a bill of particulars to outline the conduct of the specific behavior which would distinguish each of these counts." (Appellant's Brf., p. 12.) To the contrary, we find there is sufficient evidence in the record to conclude that each of Appellant's convictions represent crimes committed with separate animus.

**{¶35}** The January 11, 2024 search yielded a flash drive and computer containing over 1,500 graphic images and seven videos depicting child pornography. According to the state, the images "depict children in many cases being sexually assaulted by adults." (1/9/25 Sentencing Hrg. Tr., p. 5.) The trial court represented the seven videos "depict[ed] images of prepubescent females performing sexual intercourse with adults." (*Id.* at p. 15-16.)

**{¶36}** It is undisputed that Appellant's convictions are predicated upon ten of the over 1,500 images and videos found in his possession. In Ohio, each download constitutes a separate crime committed with separate animus as a matter of law. Moreover, the representations of the trial court and the state establish the images and videos involve multiple children. Even if the convictions were predicated upon ten images of the same child, each image would constitute a separate offense. Accordingly, we find no plain error.

**{¶37}** Next, Appellant questions "[w]hether consecutive sentences were appropriately based." With respect to the imposition of consecutive sentences, Appellant cites two paragraphs from an Ohio Supreme Court judicial bench card, and concludes "there were no facts elicited nor evidence presented which would have enabled the court to harm [sic] so great or unusual that a single term does not adequately reflect seriousness [sic] of the conduct nor was there any mention of criminal history." (Appellant's Brf., p. 14.)

**{¶38}** "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1.

**{¶39}** "A sentence is considered to be clearly and convincingly contrary to law if it falls outside of the statutory range for the particular degree of offense; if the trial court fails to properly consider the purposes and principles of felony sentencing as enumerated in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12; or if the trial court orders consecutive sentences and does not make the necessary consecutive sentence findings." *State v. Pendland*, 2021-Ohio-1313, ¶ 41 (7th Dist.).

{¶40} Pursuant to R.C. 2929.14(C)(4), before a trial court can impose consecutive sentences on a defendant, the court must find:

[T]hat the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶41} A trial court judge must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry. *State v. Williams*, 2015-Ohio-4100, ¶ 34 (7th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. The court need not state reasons to support its finding nor is it required to use any "magic" or "talismanic" words, so long as it is apparent that the court conducted the proper analysis. *Id.,* citing *State v. Jones*, 2014-Ohio-2248, ¶ 6 (7th Dist.); *State v. Verity*, 2013-Ohio-1158, ¶ 28-29 (7th Dist.).

{¶42} There are three ways an appellant can challenge consecutive sentences on appeal. First, the appellant may argue that the sentencing court failed to state the findings

for consecutive sentences that R.C. 2929.14(C)(4) requires. R.C. 2953.08(G)(1). Second, the appellant may argue that the record clearly and convincingly does not support the findings the sentencing court made to justify consecutive sentences. R.C. 2953.08(G)(2)(a). Third, the appellant may argue that his sentence is clearly and convincingly otherwise contrary to law. R.C. 2953.08(G)(2)(b).

**{¶43}** Here, the trial court made the requisite findings at the sentencing hearing and incorporated the findings in the sentencing entry. Based on the number of images found on Appellant's computer, his admission to Arduin that he had entered a guilty plea to a charge of gross sexual imposition committed against his daughter or niece, and Arduin's observation that Appellant was content with his own behavior, we find there is clear and convincing evidence supporting Appellant's consecutive sentences.

**{¶44}** Consecutive sentences serve to protect the public and punish Appellant, and are not disproportionate to the seriousness of Appellant's conduct nor the danger Appellant poses to the public. Appellant possessed over 1,500 images and videos of child pornography. He denied searching for child pornography, claiming he was in search of "regular" porn but the child pornography just "popped up." However, the search terms found on his computer demonstrate he purposefully searched for child pornography. According to Arduin, Appellant's interest in rehabilitation was not as sincere as other offenders, and Appellant was "satisfied with himself, as he is" and "sees little need for changes in his behavior." (Assessment at p. 9.) Further, all of the offenses were committed as part of one course of conduct. *See Bosley,* 2017-Ohio-7643, ¶ 11 (multiple downloads of at least four children on same date containing same or similar search terms constitutes course of conduct for purpose of consecutive sentences).

**{¶45}** Third, Appellant contends the trial court failed to consider his military service when the trial court imposed the sentence. Military service and its impact on a defendant's emotional, mental, and physical heath are mitigating factors to be considered by the trial court. R.C. 2929.12(F). Appellant's military service was acknowledged in the sentencing memorandum and the PSI. He was in the National Guard for two years and honorably discharged. There is no evidence and Appellant does not argue his military service had any impact on his health.

**{¶46}** Our review of Appellant's challenge to his sentence is limited to determining whether his sentence is clearly and convincingly contrary to law as measured against the evidence in the record. R.C. 2953.08(G)(2); *State v. Marcum*, 2016-Ohio-1002, ¶ 7. In *State v. Jones*, 2020-Ohio-6729, the Ohio Supreme Court modified appellate court review of felony sentences, clarifying that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42. The trial court stated it considered the factors set forth in R.C. 2929.12 at the sentencing hearing.

**{¶47}** Finally, and for the first time at oral argument, Appellant argued the indictment was defective because each count contained a recitation of the criminal statute, but no specific factual information to distinguish the charged crimes. However, with the exception of a conspiracy charge, the requirements of an indictment may be met by reciting the language of the criminal statute. *State v. Nelson*, 2023-Ohio-3566, ¶ 49-50 (4th Dist.), citing *State v. Childs*, 88 Ohio St.3d 194, 199 (2000).

**{¶48}** For the foregoing reasons, we find Appellant committed the crimes for which he was convicted with separate animus and the trial court's imposition of consecutive sentences was supported by the record and not contrary to law. We further find we are without authority to independently weigh the evidence in the record or substitute our judgment with respect to the weight given to Appellant's military service. Accordingly, we find Appellant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 3

**THE MERE GUILTY PLEA TO THE COUNTS, WHETHER CORRECT OR NOT, IS NOT ENOUGH TO DETERMINE THE TIER TO WHICH [APPELLANT] SHOULD REGISTER.**

**{¶49}** Appellant contends there is insufficient evidence in the record upon which to conclude Appellant is a Tier II sex offender. By virtue of his plea to a violation of R.C. 2907.322, Appellant is guilty of a "sexually oriented offense," R.C. 2950.01(A), and

classified as a "Tier II sex offender/child-victim offender."   R.C. 2950.01(F)(1)(a). Therefore, Appellant's third assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**IT IS UNCLEAR WHETHER THE COURT IS GIVEN NOTICE [SIC] OF THE DUTY TO REGISTER AS A SEX OFFENDER OR CHILD VICTIM OFFENDER IN ACCORDANCE WITH [R.C. 2950.03 OR 2950.40] BASED UPON THE WRITTEN GUILTY PLEA.**

## ASSIGNMENT OF ERROR NO.4

**THE PENALTIES FOR FAILURE TO REGISTER ARE NOT SPECIFICALLY SPELLED OUT.**

**{¶50}**  Next, Appellant contends the notice provided by the trial court regarding the sex-offender registry was insufficient at both the plea and sentencing hearing because he was not informed regarding notice of residency changes or the consequences for his failure to register.   He further challenges the content and certain omissions in the sex offender entry.

**{¶51}**  The purpose of the Crim.R. 11(C)(2) colloquy in plea hearings in felony cases is to ensure that a defendant is advised of and understands his constitutional and nonconstitutional rights, so that he has sufficient information to enter a plea knowingly, intelligently, and voluntarily. *State v. Veney*, 2008-Ohio-5200, paragraph one of the syllabus; *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981).  We review the knowing, intelligent, and voluntary nature of a plea de novo. *State v. Stewart*, 51 Ohio St.2d 86 (1977).

**{¶52}**  The Supreme Court of Ohio has formulated the following three-part test to determine whether a defendant knowingly, intelligently, and voluntarily entered his or her plea:

(1) Has the trial court complied with the relevant provision of the rule?

(2) If the trial court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and

(3) If a showing of prejudice is required, has the defendant met that burden?"

*State v. Dangler*, 2020-Ohio-2765, ¶ 17.

**{¶53}** A defendant is not required to show prejudice if the trial court completely fails to comply with Crim.R. 11(C)(2)(a) or (b), nor when a trial court fails to explain the constitutional rights outlined in Crim.R. 11(C)(2)(c). In that case, the reviewing court presumes the plea was entered involuntarily and unknowingly, and no showing of prejudice is required. *Dangler* at ¶ 14.

**{¶54}** In *Dangler*, the trial court advised the defendant that a guilty plea to a sexual battery charge would require him " 'to register as a Tier III sex offender which means you would have an obligation to register for your lifetime,' " which Dangler confirmed he understood. *Id.* at ¶ 4. The trial court provided the registration details at the sentencing hearing. Dangler confirmed the initial registration date and his understanding of the requirements.

**{¶55}** On appeal, Dangler claimed the trial court failed to notify him of the maximum sentence (a non-constitutional right), that is, to completely advise him of the responsibilities and requirements associated with the sex-offender classification during the plea colloquy. The Ohio Supreme Court identified the threshold question as "whether the classification of an offender as a sex offender and the various obligations that come with that classification are part of the 'penalty' that is imposed on a defendant for his crime" under Crim.R. 11(C)(2)(a). *Id.* at ¶ 18.

**{¶56}** The Court proceeded with the "assumption" that the sex-offender registration scheme constituted a penalty for purposes of Crim.R. 11, based on its reasoning in *State v. Williams*, 2011-Ohio-3374 (finding retroactive application of amendments to the sex-offender registration as a whole to be punitive). *Dangler* at ¶ 20. The Court concluded "[b]ecause the trial court [ ] advised Dangler that he would be subject

to the registration requirements of that statutory scheme, the trial court did not completely fail to comply with" the maximum-penalty-advisement requirement under Crim.R. 11(C)(2)(a). *Id.* at ¶ 22.

**{¶57}** Partial compliance required Dangler to show prejudice, which must be established on the face of the record. *Dangler* at ¶ 7. The Ohio Supreme Court rejected Dangler's argument that his challenge to the plea explicitly demonstrated his plea would not have been otherwise made. *Id.* Nonetheless, the *Dangler* Court "encourage[d] trial courts to be thorough in reviewing consequences of a defendant's decision to enter a plea, including those stemming from classification as a sex offender: the duty to register and provide in-person verification, the community-notification provisions, and the residency restrictions. *Id.* at ¶ 25.

**{¶58}** Turning to the above-captioned appeal, we find the trial court partially complied with the notice requirement, and there is nothing in the record indicating Appellant would not have entered his plea if he had been more thoroughly informed of the sex offender registry requirements. Accordingly, we find Appellant's plea was knowingly and intelligently entered.

**{¶59}** With respect to the sex offender entry, Appellant contends the notice given is insufficient. The only specific examples Appellant provides are the dearth of information regarding Appellant's obligation to register if he is homeless, and the trial court's failure to notify Appellant that registration violations are strict liability offenses.

**{¶60}** R.C. 2950.03(A) provides in relevant part:

> Each person who has been convicted of . . . a sexually oriented offense . . . and who has the duty to register . . . shall be provided notice in accordance with this section of the offender's . . . duties imposed under sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code and of the offender's duties to similarly register, provide notice of a change, and verify addresses in another state if the offender resides, is temporarily domiciled, attends a school or institution of higher education, or is employed in a state other than this state.

R.C. 2950.03(A)(2) requires that a defendant be provided with that notice at the time of sentencing.

{¶61} R.C. 2950.03(B)(1) sets forth the notice requirements for sex offender registration. R.C. 2950.03(B)(1)(a) provides the "judge shall require the offender to read and sign a form stating that the offender's duties to register . . . have been explained to the offender," and that "[i]f the offender is unable to read . . . the judge shall certify on the form that the . . . judge specifically informed the offender of those duties and that the offender indicated an understanding of those duties."

{¶62} The sex offender registration notice requirements are set forth in R.C. 2950.03(B)(1), which reads:

> The notice provided under division (A) of this section shall inform the offender . . . of the offender's . . . duty to register, to provide notice of a change in the offender's . . . residence address or in the offender's school, institution of higher education, or place of employment address, as applicable, and register the new address, to periodically verify the offender's . . . residence address or the offender's school, institution of higher education, or place of employment address, as applicable, and, if applicable, to provide notice of the offender's . . . intent to reside, pursuant to sections 2950.04, 2950.041, 2905.05, and 2950.06 of the Revised Code. The notice shall specify that, for an offender, it applies regarding residence addresses or school, institution of higher education, and places of employment addresses . . . Additionally, it shall inform the offender of the offender's duties to similarly register, provide notice of a change in, and verify those addresses in states other than this state as described in division (A) of this section.

{¶63} R.C. 2950.03(B)(1)(a) provides the "judge shall require the offender to read and sign a form stating that the offender's duties to register . . . have been explained to the offender," and that "[i]f the offender is unable to read, the . . . judge shall certify on the form that the . . . judge specifically informed the offender of those duties and that the offender indicated an understanding of those duties." The notice "shall be on a form prescribed by the bureau of criminal identification and investigation and shall contain all

of the information specified in division (A) of this section and all of the information required by the bureau." R.C. 2950.03(B)(2).

{¶64} R.C. 2950.03(B)(3) requires that after the form is signed or certified in accordance with R.C. 2950.03(B)(1)(a), the judge must distribute copies of the form as follows:

> [O]ne copy of the form to the offender . . . [and] shall send one copy of the form to the bureau of criminal identification and investigation . . . the sheriff of the county in which the offender expects to reside, and . . . the sheriff of the county in which the offender was convicted or pleaded guilty if the offender has a duty to register pursuant to division (A)(1) of section 2950.04 or 2950.041 of the Revised Code.

{¶65} Having reviewed the sex offender entry, we find it includes the statutorily-mandated information. However, we remand the matter for the entry of a nunc pro tunc order that includes the information omitted from the original entry, which shall be distributed in accordance with R.C. 2950.03(B)(3). Accordingly, we find Appellant's second assignment of error has no merit, and his fourth assignment of error has merit only to the extent it challenges the omissions in the sex offender entry.

## CONCLUSION

{¶66} For the foregoing reasons, Appellant's convictions, classification as a Tier II sex offender, and consecutive sentences are affirmed. This matter is remanded for the issuance of a nunc pro tunc order to provide the missing information (sentencing date and check box that Appellant was incarcerated) in the sex offender entry, which shall be distributed in accordance with R.C. 2950.03(B)(3).

Robb, P.J., concurs.

Hanni, J., concurs.

Case No. 25 MA 0005

_____

For the reasons stated in the Opinion rendered herein, Appellant's convictions, classification as a Tier II sex offender, and consecutive sentences are affirmed. However, we remand this matter to the Court of Common Pleas of Mahoning County, Ohio, for the issuance of a nunc pro tunc order to provide the missing information in the sex offender entry according to law and consistent with this Court's Opinion. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**