[Cite as *State v. Harris*, 2025-Ohio-4664.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ALAN HARRIS, JR.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 BE 0022**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 23 CR 118

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Christopher P. Lacich*, Roth, Blair, for Defendant-Appellant.

Dated: October 8, 2025

**DICKEY, J.**

{¶1}   Appellant, Alan Harris, Jr., appeals the April 22, 2025 judgment entry of the Belmont County Court of Common Pleas imposing maximum, consecutive sentences for his convictions for one count of attempted pandering obscenity involving a minor or impaired person, and two counts of pandering obscenity, following his guilty plea to a bill of information.   In his sole assignment of error, Appellant argues for the first time on appeal that his pandering obscenities charges should have merged as they are allied offenses of similar import. He further argues his consecutive sentences are contrary to law.   Finding no reversible error, the April 22, 2025 judgment entry of the Belmont County Court of Common Pleas is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶2}   On March 14, 2023, the Barnesville Police Department responded to a report of domestic violence.   During a police interview with E.P.B., who is the mother of Appellant's two children, E.P.B. accused Appellant of rape. E.P.B. also indicated Appellant was a registered sex offender and probably had images of child pornography on his computer.   As a consequence of additional information provided during the interview, Appellant was arrested for domestic violence.

{¶3}   While in jail, Appellant asked another woman during a recorded telephone conversation to retrieve his mobile telephone and computer from the residence. However, E.P.B. brought the mobile telephone and computer to the police station before the other woman could retrieve them.

{¶4}   On May 4, 2023, following the execution of a search warrant for the contents of Appellant's computer and external hard drive, Appellant was indicted for five counts of rape in violation of R.C. 2907.02(A)(2), (B), felonies of the first degree; five counts of pandering obscenity involving a minor or impaired person in violation of R.C. 2907.321(A)(5), felonies of the fourth degree; and four counts of domestic violence in violation of R.C. 2919.25(A), (D)(2), misdemeanors of the first degree.

{¶5}   On July 14, 2023, Appellant filed written pleas of not guilty and not guilty by reason of insanity.   Following a court-ordered competency examination, the trial court determined Appellant was competent to stand trial.   The report is not in the record.

Case No. 25 BE 0022

**{¶6}** On November 7, 2024, a superseding indictment was filed charging Appellant with five counts of rape, eleven counts of pandering obscenity involving a minor or impaired person, and four counts of domestic violence.

**{¶7}** At a plea hearing conducted on March 24, 2025, counsel informed the trial court that a bill of information had been filed as a part of plea negotiations, charging Appellant with one count of attempted pandering obscenity involving a minor or impaired person, in violation of R.C. 2907.321(A)(1)(C) and R.C.2923.02(A) (attempt), a felony of the third degree, and two counts of pandering obscenity in violation of R.C. 2907.32(A)(5), felonies of the fifth degree. Appellant waived his right to indictment both at the hearing and in writing, and he entered guilty pleas to the three counts in the bill of information. The state represented it would seek the maximum sentences for each conviction.

**{¶8}** During the plea colloquy, the trial court explained:

TRIAL COURT: Do you understand that you'd be entering guilty pleas here today to attempted pandering and Count II as pandering and Count III as pandering; Count I is a felony of the third agree [sic], where you face up to 36 months in prison. Count II is a felony of the fifth degree where you face up to 12 months in prison, and Count III is another felony of the fifth degree where you face up to 12 months in prison, unless there's something that the Court will be advised of that they would have to merge, these could run consecutive. So you would face a possibility of five years in prison. Do you understand that?

DEFENDANT: Yes, Your Honor.

TRIAL COURT: And do you understand if you enter pleas here today of guilty, you'd be making a complete admission that you committed these offenses, and therefore, the State of

Ohio wouldn't have any burden to prove you guilty; do you understand that?

DEFENDANT:     Yes, Your Honor.

(3/24/25 Plea Hrg., p. 9-10.)

{¶9}   The record does not contain the specific images or any description of the specific images that form the basis for Appellant's convictions.  A police report detailing the material found on Appellant's computer and external hard drive is attached to the pre-sentence investigation report.  According to the police report, the search yielded images of violent pornography, including torture (images of E.P.B. being raped by Appellant and the use of a taser on her genitals); "females that appeared to be juveniles [between the ages of twelve and sixteen] posing nude, masturbating, or engaged in other sexually oriented acts"; toddlers engaged in oral, vaginal, and anal sex with males; and necrophilia.

{¶10}  At the sentencing hearing, the state argued in favor of the imposition of consecutive sentences, based on Appellant's previous conviction for the same crimes in Pennsylvania, and the fact that he was already a registered sex offender when the conduct underlying his conviction in this case occurred. Defense counsel argued Appellant struggled with mental health problems, but conceded "that doesn't lessen the risk of future crime; it doesn't lessen the severity of the crime . . . and [Appellant] understands that." (4/21/25 Sentencing Hrg. Tr., p. 8.)

{¶11}  Appellant provided the following statement during his allocution:

Your Honor, I know I have pretty significant mental health problems. I have dissociative identity disorder [previously known as multiple personality disorder]. From one day to the next, I'm somebody completely different and I don't remember 95 percent of my life. With that being said, I can't really speak to much about anything regarding these events, because I don't even really remember anything. I mean, these were a couple years ago, and I don't really remember anything around that time, let alone, you know, specifically what's going on with it. I mean, I heard there are state

hospitals that the prison system is connected to; maybe I can get some mental health services and focus on that. I know I definitely need mental health treatment. And over the last couple of years, I know I have taken steps towards bettering my life since all of this has happened. I – I started attending religious services, and I created my own company for the purpose of trying to give back to the community. So I've taken steps towards being a net positive within the community itself.

That being said, I am probably going to need mental health treatment for the rest of my life. I don't know what that looks like in the future, but I'm willing to engage with whatever I need to get better.

(*Id.* at p. 10-11.)

**{¶12}** The trial court responded:

I honestly reviewed your prior record. You served a prison sentence in [the Department of Youth Services] as a juvenile. As an adult, you served a prison sentence for convictions of dissemination, for sexual abuse of children, possession of child pornography. And here you are back again.

You were initially arrested in this case on a domestic violence allegation. You sat here today and told me you really don't remember what was going on back then, but yet, you had the wherewithal to contact your girlfriend or your wife to explain to her, "Get out the computer and my phone so law enforcement can't find them."

And what was found on them after a search warrant? Homemade videos of torture; snuff films, juveniles engaging in sex acts with adults; macrophilia [sexual paraphilia involving giants or the concept of being significantly smaller in comparison to a sexual partner]; sexual violence; adult males having sex with toddlers; babies being raped. That's what was on your computer.

You're telling me today you had no idea and don't remember what was on there, but you had the wherewithal to try to destroy it before it was found by authorities.

During your interview with the evaluator, you said the first conviction in [Pennsylvania] wasn't you; it was somebody else and you just plead guilty to get the case over. You also said it wasn't you here. You also said you're not attracted to children. Then why on earth do you have image after image of babies being raped?

(*Id.* at p. 11-13.)

**{¶13}** The trial court provided the following representations prior to imposing sentence:

The Court has considered the record, the oral statements, the Presentence Investigation, as well as the principles and purposes of sentencing under 2929.11, and has balanced the seriousness and recidivism factors under 2929.12.

The Court finds the [Appellant] has been convicted pursuant to a plea of guilty and a finding of guilt on March 24, 2025, to Count I, attempted pandering obscenity involving a minor, a felony of the third degree; Count II, pandering obscenity, a felony of the fifth degree; and Count III, pandering obscenity, a felony of the fifth degree, contained within the Bill of Information.

In accord with 2929.13(A), the Court has reviewed whether a sanction or a combination of sanctions pursuant to 2929.13 through 2929.18 is appropriate. This Court, in its discretion, has determined the most effective way to comply with the purposes and principles of sentencing as set forth under 2929.11, and has considered the factors contained within 2929.12(B) (C)(D)(E), 2929.13 and 2929.14, and any other factors relevant to achieving those purposes and principles.

In light of that guidance, the Court finds that certain factors contained within 2929.12(D), 2929.13(B), and 2929.34 apply to this [Appellant], as follows: The [Appellant] has a history of criminal convictions. As a juvenile, he was convicted of aggravated assault, possession or consumption of alcohol, criminal trespass and unruly habitual. As an adult, he has misdemeanor convictions for expired license, driving under suspension, stop sign, seat belt, persistent disorderly conduct, controlled substance, public drunkenness, and DUI. He has felony convictions of dissemination of photographs, videotapes and computer depictions and films; sexual abuse of children; possession of child pornography.

He has served a prior prison term; he has not responded favorably to sanctions previously imposed. He's previously been convicted of similar offenses, and is a registered sex offender; does not – does not demonstrate any genuine remorse, and the present offenses are sex offenses.

In accord with 2929.12(E), the Court finds that no additional mitigating factors exist which suggest that recidivism is less likely.

In view of the above-stated findings and considering the purposes and principles of sentencing, this Court finds that community control sanctions, or a combination of them, or the minimum sentence, would not adequately punish the [Appellant] and protect the public from future crime. And a community control sanction, or combination of them, would demean the seriousness of the offenses, and that factors decreasing seriousness are greatly outweighed by those increasing seriousness, and there is more likelihood of recidivism if the [Appellant] is placed on community control or given a shorter sentence.

The Court also finds that consecutive sentences are necessary to protect the public and to punish the offender. Consecutive sentences are also not disproportionate to the seriousness of the [Appellant's] conduct, and the danger posed to the public.

Additionally, [Appellant's] criminal history shows that consecutive sentences are needed to protect the public.

(*Id.* at p. 13-16.)

**{¶14}** The trial court imposed the maximum sentences for all three convictions, to be served consecutively, for an aggregate term of imprisonment of five years. This timely appeal followed.

## ANALYSIS

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED WHEN IT IMPOSED A SENTENCE CLEARLY AND CONVINCINGLY CONTRARY TO LAW, WHEN IT SENTENCED THE APPELLANT TO A PRISON SANCTION OF 60 MONTHS, BY NOT IMPLEMENTING MERGER OR GIVING AN EXPLANATION AS TO WHY MERGER WAS NOT REQUIRED AND/OR BY IMPOSING CONSECUTIVE SENTENCES.**

**{¶15}** For the first time on appeal, Appellant argues his pandering obscenity convictions for counts two and three should have been merged as they are allied offenses of similar import. Appellant predicates his argument on the fact that the charges in the bill of information for counts two and three are identical. The bill of information reads in relevant part:

> **COUNT 2** On or about the 22nd day of March, 2023, [Appellant] did, with knowledge of the character of the material or performance involved, buy, procure, possess, or control any obscene material with the purpose to violate Section 2907.32(A)(2) or 2907.32(A)(4) of the Ohio Revised Code. All in violation of Ohio Revised Code Section 2907.32(A)(5).

> **COUNT 3** On or about the 22nd day of March, 2023, [Appellant] did, with knowledge of the character of the material or performance involved, buy, procure, possess, or control any obscene material with the purpose to

violate Section 2907.32(A)(2) or 2907.32(A)(4) of the Ohio Revised Code.

All in violation of Ohio Revised Code Section 2907.32(A)(5).

(3/24/25 Bill of Information, p. 1.)

{¶16} Appellant writes, "there is no indicia apparent from the record, including the superseding indictment, as to whether the activities related to Counts II and III occurred on the same day or different dates." (Appellant's Brf. at p. 6.) Therefore, Appellant argues his crimes were committed with a single animus and arose from a single course of conduct. Appellee counters that Appellant failed to show the offenses were subject to merger.

{¶17} R.C. 2941.25 codifies the double jeopardy protection against multiple punishments for the same offense. *In re A.G.*, 2016-Ohio-3306, ¶ 11; *State v. Ruff*, 2015-Ohio-995, ¶ 10, 12. It reads:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶18} "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Ruff*, 2015-Ohio-995, paragraph three of the syllabus. "An

affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *Id.* at ¶ 31.

**{¶19}** Where a defendant's conduct harms more than one person, the harm to each person is separate and the defendant can be convicted on multiple counts. *Id.* at ¶ 26. "[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable harm from the harm of the other offense." *Id.*

**{¶20}** The Ohio Supreme Court has recognized that analyzing whether offenses are of dissimilar import "may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct - an inherently subjective determination." *Id.* at ¶ 32.

**{¶21}** While the defendant bears the burden of establishing entitlement to having offenses merged under R.C. 2941.25, an appellate court conducts a de novo review of the trial court's decision regarding merger of offenses. *State v. Washington*, 2013-Ohio-4982, ¶ 18. The imposition of multiple sentences for allied offenses of similar import constitutes plain error where the error is obvious and results in an injustice. *State v. Bailey*, 2022-Ohio-4407, ¶ 14-16 (error is not obvious when it turns on factual distinctions).

**{¶22}** We have previously rejected the argument that multiple charges of pandering sexually oriented material predicated upon multiple images from a single download are allied offenses of similar import. In *State v. Bosley*, 2017-Ohio-7643 (7th Dist.) and *State v. Lucicosky*, 2017-Ohio-2960 (7th Dist.), we adopted the rationale first advanced by the Eighth and Tenth Districts that a separate conviction is allowed for each individual image, even if they were the product of a single download. We agreed with our sister districts that a separate animus exists every time a separate image or file is downloaded and saved.

**{¶23}** The Eighth District in *State v. Duhamel*, 2015-Ohio-3145 (8th Dist.), held the act of downloading "each file of child pornography" was done with a separate animus and "each downloaded file was a crime against a separate victim or victims." *Id.* at ¶ 62. The *Duhamel* Court held "[e]very video or image of child pornography on the internet

constitutes a permanent record of that particular child's sexual abuse. The harm caused by these videos is exacerbated by their circulation." *Id.* at ¶ 54. The Eighth District further observed that images depicting rape or abuse are far more harmful than solitary photographs of nude children. *Id.* at ¶ 55.

**{¶24}** The Tenth District in *State v. Eal*, 2012-Ohio-1373 (10th Dist.), similarly held each individual image represents a "new and distinct crime" and the mere fact that the downloads occurred in quick succession did not " 'mean that they were not committed separately or with separate animus.' " *Id.* at ¶ 93, quoting *State v. Blanchard*, 2009-Ohio-1357, ¶ 12 (8th Dist.). In *State v. Mannarino*, 2013-Ohio-1795 (8th Dist.), the Eighth District held that two counts of pandering sexually oriented matter involving a minor under R.C. 2907.322(A)(1) and (A)(2) were not allied offenses of similar import where each charge was supported by a separate image or video. *Id.* at ¶ 53.

**{¶25}** The same is true here. Regardless of whether the conduct underlying counts two and three occurred on the same or different days, we have found the possession of each obscene image is committed with separate animus.

**{¶26}** Further, the search yielded images of violent pornography, including torture (images of E.P.B. being raped by Appellant and the use of a taser on her genitals); "females that appeared to be juveniles [between the ages of twelve and sixteen] posing nude, masturbating, or engaged in other sexually oriented acts"; toddlers engaged in oral, vaginal, and anal sex with males; and necrophilia. To the extent Appellant is arguing counts two and three involve the same image, the evidence in the record shows there are multiple images involving multiple victims. Further, the images of E.P.B. must have been filmed not downloaded.

**{¶27}** Earlier this year, we considered whether pandering charges constituted allied offenses of similar import where there was no description of the images underlying each conviction in *State v. Sargent*, 2025-Ohio-2579 (7th Dist.). In that case, Sargent's ten pandering convictions were predicated upon a cache of over 1,500 graphic images and seven videos depicting child pornography found on his flash drive and computer. The ten specific images or videos were not identified. According to representations made by the state at the sentencing hearing, the images "depict[ed] children in many cases being sexually assaulted by adults." *Id.* at ¶ 35. Further, the trial court represented the seven

videos "depict[ed] images of prepubescent females performing sexual intercourse with adults." *Id.* We found the foregoing representations were sufficient to establish Sargent's ten crimes were committed with separate animus. *Id.* at ¶ 36. We reasoned "[e]ven if the convictions were predicated upon ten images of the same child, each image would constitute a separate offense." *Id.*

**{¶28}** Based on our precedent, two images that are part of a single download constitutes crimes committed with a separate animus. Accordingly, we find no plain error.

**{¶29}** Turning to Appellant's argument based on the trial court's imposition of consecutive sentences, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. The Ohio Supreme Court has explained that " 'clear and convincing evidence' is a degree of proof that is greater than a preponderance of the evidence but less than the beyond-a-reasonable-doubt standard used in criminal cases." *State v. Glover*, 2024-Ohio-5195, ¶ 46, citing *State v. Gwynne*, 2023-Ohio-3851, ¶ 14. It "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶30}** In *Glover*, the Ohio Supreme Court recently clarified the high burden appellants must satisfy in order to show that the imposition of consecutive sentences is not supported by the record:

The appellate-review statute does not require that the appellate court conclude that the record supports the trial court's findings before it may affirm the sentence. Rather, the statute only allows for modification or vacation only *when the appellate court "clearly and convincingly finds" that the evidence does not support the trial court's findings.* R.C. 2953.08(G)(2)(a). "This language is plain and unambiguous and expresses the General Assembly's intent that appellate courts employ a deferential standard to the trial court's consecutive-sentence findings. R.C. 2953.08(G)(2) also ensures that an appellate court does not simply

substitute its judgment for that of a trial court." *Gwynne*, 2023-Ohio-3851, 231 N.E.3d 1109, at ¶ 15 (lead opinion).

(Emphasis added) *Glover* at ¶ 46.

{¶31} Pursuant to R.C. 2929.14(C)(4), before a trial court can impose consecutive sentences, the trial court must find:

> [T]hat the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶32} The trial court must make the consecutive sentence findings at the sentencing hearing and incorporate the findings into the sentencing entry. *State v. Williams*, 2015-Ohio-4100, ¶ 34 (7th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. The court need not state reasons to support its finding nor is it required to use any "magic" or "talismanic" words, so long as it is apparent that the court conducted the proper

Case No. 25 BE 0022

analysis. *Id.*, citing *State v. Jones*, 2014-Ohio-2248, ¶ 6 (7th Dist.); *State v. Verity*, 2013-Ohio-1158, ¶ 28-29 (7th Dist.).

**{¶33}** Here, Appellant argues the trial court did not give any weight to Appellant's acceptance of responsibility or his mental illness. However, neither of the foregoing factors are relevant to the imposition of consecutive sentences. Moreover, Appellant never admitted his conduct, acknowledged his crimes, or expressed any remorse.

**{¶34}** Next, Appellant argues "a period of incarceration less than imposed would still have accomplished the same goals of the sanction, all while allowing Appellant to reenter society sooner with the goal of rehabilitation and to prevent recidivism." (Appellant's Brf. at p. 13.) To the contrary, Appellant's previous incarceration did not accomplish the goals of rehabilitation and prevention of recidivism.

**{¶35}** Moreover, the statutory factors for imposing consecutive sentences are not predicated upon expediting Appellant's return to society, but instead punishment and the neutralization of the threat he poses to society. Based on the images found on Appellant's computer and external hard drive, his previous convictions, his previous incarceration, and the fact Appellant was a registered sex offender when he committed the crimes underlying his convictions in this case, we do not clearly and convincingly find that the evidence in the record does not support the trial court's imposition of consecutive sentences.

**{¶36}** Further, to the extent Appellant is challenging his aggregate sentence as contrary to law, the Ohio Supreme Court opined in *Glover* that "[n]owhere does the appellate-review statute direct an appellate court to consider the defendant's aggregate sentence." *State v. Glover*, 2024-Ohio-5195, ¶ 43 (4-3 opinion). The *Glover* majority found a court of appeals must limit its consecutive sentence analysis to the statutory factors set forth in R.C. 2929.14(C)(4), and commits error if it considers the propriety of an aggregate sentence where consecutive sentences are imposed. *Id.*

## CONCLUSION

**{¶37}** For the foregoing reasons, Appellant's assignment of error is not well-taken. The April 22, 2025 judgment entry of the Belmont County Court of Common Pleas imposing maximum, consecutive sentences is affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**